UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. NORRIS LEE OGG, | Case: 1:22−cv−03515 JURY DEMAND Assigned To : Mehta, Amit P. Assign. Date : 11/15/2022 Description: Gen. Civ. (E−DECK) |
| Plaintiffs, | |
| vs. | QUI TAM COMPLAINT |
| WRIGHT BROTHER PIZZA, INC., and THOMAS F. WRIGHT, individually, | DEMAND FOR JURY TRIAL Filed under seal pursuant to 31 U.S.C. § 3730(b)(2) |
| Defendants. | |

22 CV

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      This is a civil action by Relator NORRIS LEE OGG ("Relator") on Relator's own behalf and on behalf of the United States of America ("United States") against WRIGHT BROTHER PIZZA, INC., ("WBP"), and THOMAS F. WRIGHT, individually, ("Wright"), (jointly, the "Defendants"), under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"), for treble damages, per claim/per false statement penalties, reasonable attorneys' fees, litigation expenses and costs, and other relief, arising from Defendants' fraudulent application, receipt and use of Paycheck Protection Program ("PPP") funds received, directly or indirectly, from the United States Small Business Administration ("SBA") in or about April 2020 and forgiven on or about June 15, 2021. (The "*Qui Tam* Claim.").

## OVERVIEW OF THE ACTION

2.      As set forth more fully below in this complaint, Defendants violated the false claims liability provisions of the FCA by applying for, receiving, and misusing PPP funds in the amount of $326,700, as well as, seeking and obtaining forgiveness for this loan amount plus interest, for a total of $330,396.63, all in violation of 31 U.S.C. §§ 3729 (a)(1)(A), (B) and (G).

1

3.      As a result of the above-described activities, the United States suffered significant economic losses, the precise amount of which will be determined at trial.

## JURISDICTION

4.      The Court has subject matter jurisdiction over the federal claims alleged in this complaint under 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1331 (federal question), and § 1345 (United States as plaintiff, should it choose to intervene in the action).

5.      The Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. §3732(a) because Defendants can be found, reside, or transact business in this District, and because an act proscribed by 31 U.S.C. § 3729 occurred within this District. Section 3732(a) further provides for nationwide service of process.

## VENUE

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a) in that Defendants reside or transact business in this District, and a substantial part of the events or omissions giving rise to the violations of 31 U.S.C. § 3729 alleged in this complaint occurred in this District.

## PARTIES, ENTITIES, AND INDIVIDUALS

7.      The United States, through the SBA, is the real party in interest in the Q*ui Tam* Claims in this action.

8.      The SBA is located at 409 Third Street, SW, Washington, D.C. 20416. The SBA was created in 1953 as an independent agency of the United States government ("Government") to aid, counsel, assist and protect the interests of small business concerns, to preserve free competitive enterprise and to maintain and strengthen the overall U.S. economy. Among other things, the SBA assists small businesses in recovering from economic disasters, such as, the

coronavirus pandemic that ravaged the U.S. economy beginning in early 2020. One means the SBA uses in such circumstances is providing low-interest loans to qualified borrowers.

9.      The SBA contracted with the numerous banks and other financial institutions to serve as loan processors, underwriters and lenders for borrowers of PPP funds during 2020. The lender at issue here is The City National Bank of Florida ("City National Bank"). City National Bank's headquarters are located at 100 SE 2nd Street, 13th Floor, Miami, FL 33131, and its telephone number is (305) 349-5465.

10.     Relator is a resident of Ohio. From on or about January 1995 to on or about February 2022, Relator provided outside accounting services to Defendants.

11.     WBP is an Ohio domestic for-profit corporation, formed in or about 1991. WBP is in the business of making and delivering pizzas and related foods and beverages. In 2020, WBP's annual revenues were approximately $3.8m, which represented approximately a 10% increase over its 2019 annual revenues. WBP is headquartered at 9430 Hill Road South, Pickerington, OH 43147, and its telephone number is (614) 778-1124. Defendants applied for and received the PPP funds at issue in the name of WBP. WBP's SBA loan number for its PPP loan is 8119107004. At times relevant to this complaint, WBP maintained the following accounts at JPMorgan Chase Bank:

| Main Account: | JPMorgan Chase Bank | 000000160651391 |
|---|---|---|
| Store Accounts: (deposit accounts) | | |
| Store 2178 | JPMorgan Chase Bank | 000000866450976 |
| Store 2332 | JPMorgan Chase Bank | 000000866450992 |
| Store 2227 | JPMorgan Chase Bank | 000000515515901 |
| Store 2315 | JPMorgan Chase Bank | 000000866450984 |

| Store 2204 | JPMorgan Chase Bank | 000000692026318 |

12.     Wright resides in Pinkerton, Ohio. Wright is the owner, operator and president of WBP, which he started in or about 1991. Wright caused WBP to wrongfully apply for, receive, retain, and misuse PPP funds, and to obtain forgiveness of the loan's principal and interest. Wright's cell phone number is (614) 778-1124.

## FALSE CLAIMS LIABILITY UNDER THE FCA

13.     The FCA imposes civil liability on "any person" who, among other things:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;…or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. §§ 3729(a)(1)(A), (B) and (G).

## DEFINITIONS IN THE FCA'S FALSE CLAIMS LIABILITY SECTION

14.     For purposes of the FCA, "knowing" and "knowingly" mean that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.   31 U.S.C. § 3729(b)(1).

15.     For purposes of the FCA, "claim" means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the

money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A) (as amended May 20, 2009; the prior version is materially identical for purposes of this action).

16.     For purposes of the FCA, "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment. 31 U.S.C. § 3729(b)(3).

17.     For purposes of the FCA, "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

## FALSE CLAIMS DAMAGES AND PENALTIES AND QUI TAM AWARDS UNDER THE FCA

18.     The FCA imposes liability on any person violating Section 3729 to the United States as follows: a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104–410), plus three (3) times the amount of damages which the United States sustained because of the act of that person. 31 U.S.C. § 3729(a)(1).

19.     Where the Government proceeds with an action commenced by the filing of a *qui tam* complaint and recovers money from a defendant under Section 3729, the person who initiated the action (the "relator") may receive between fifteen percent (15%) and twenty-five percent (25%)

of the proceeds. Where the Government does not proceed with such an action and the relator

pursues it on his/her own and recovers proceeds from a defendant under Section 3729, the relator

may receive between twenty-five percent (25%) and thirty percent (30 %) of the proceeds. In

either case, the relator is also entitled to an award against the defendant for the amount of all

reasonable expenses, attorneys' fees and costs. 31 U.S.C. § 3730(d).

## NONE OF THE FCA'S FALSE CLAIM AND QUI TAM BAR PROVISIONS IS APPLICABLE

20. Upon information and belief, none of the bars set forth in the FCA's false claims

and *qui tam*-related provisions, 31 U.S.C. §§ 3730(b)(5) and (e), is applicable to this action.

21. Upon information and belief, no person other than the Government has brought a

related action based on the facts underlying this complaint. 31 U.S.C. § 3730(b)(5).

22. This action is not brought by a former or present member of the armed forces under

31 U.S.C. § 3730(b) against a member of the armed forces arising out of such person's service in

the armed forces. 31 U.S.C. § 3730(e)(1).

23. This action is not brought against a Member of Congress, a member of the judiciary,

or a senior executive branch official. 31 U.S.C. § 3730(e)(2).

24. Upon information and belief, this action is not based on allegations or transactions

which are the subject of a civil suit or an administrative civil money penalty proceeding in which

the Government is already a party. 31 U.S.C. § 3730(e)(3).

25. Upon information and belief, none of the allegations or transactions as alleged in

this action or claim were publicly disclosed via the following channels: (i) in a Federal criminal,

civil, or administrative hearing in which the Government or its agent is a party; (ii) in a

congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media. 31 U.S.C. § 3730(e)(4)(A).

26.    In addition to the foregoing allegation, Relator is an "original source," as defined in the FCA, 31 U.S.C. § 3730(e)(4)(B), because: (1) prior to a public disclosure under 31 U.S.C. §§ 3730(e)(4)(A)(i)-(iii), Relator voluntarily disclosed to representatives of the United States Attorney's Office for the District of Columbia the information on which the allegations or transactions in this complaint's claims are based; and/or (2) through work as outside accountant for Defendants, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions, and Relator voluntarily provided the information to representatives of the United States Attorney's Office for the District of Columbia before filing an action under the *qui tam* provisions of the FCA. 31 U.S.C. §§ 3730(e)(4)(B)(1) and (2).

## FCA'S STATUTE OF LIMITATIONS

27.    A *qui tam* claim under section 3730(b) of the FCA may not be brought: (1) more than 6 years after the date on which the violation of section 3729 is committed; or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b).

28.    A retaliation claim under section 3730(h) of the FCA may not be brought more than 3 years after the date when the retaliation occurred.  31 U.S.C. § 3730(h)(3).

## PAYCHECK PROTECTION PROGRAM

29.    Congress authorized the PPP in the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-136, of March 2020. The program was intended to provide

emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic through forgivable loans to small businesses for job retention and other specified expenses. The two most favorable aspects of the loans were a low interest rate (namely, 1%) and the opportunity to have the loan's principal and interest completely forgiven if certain specified conditions were met.

30.    Congress originally authorized approximately $349 billion in PPP funds in March 2020. In April 2020, it authorized an additional approximate $310 billion.

31.    Between approximately April 3, 2020 and August 8, 2020, the SBA made approximately 5.2 million PPP loans in the United States (so-called, first draw or round PPP loans). Of these, approximately 660,000 applicants received between $150,000 and $10 million in PPP funds. The PPP loan program was subsequently extended for a second draw for certain eligible borrowers.

32.    Because of the overwhelming need to get financial relief as quickly as possible to small businesses during the early stages of the coronavirus pandemic, the SBA did not implement close or stringent lending oversight to individual PPP loan applications requesting less than $2 million. It was almost an honor system among the applicants, the lenders and the SBA. The SBA's Office of Inspector General ("OIG") has since publicly acknowledged there was massive fraud in the applications for, and receipt of, PPP funds.

33.    PPP rules required the funds to be expended solely on the following "authorized purposes," also referred to as, "allowable uses" or "permissible expenses": payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities.

34.    PPP rules defined "payroll costs" to include wages, salaries, tips and commissions, as well as the following non-cash employment benefits: employer contributions to defined-benefit

or defined-contribution retirement plans; payment for the provision of employee benefits consisting of group health care coverage, including, insurance premiums; payment of state and local taxes assessed on compensation of employees; and costs for employee vacation, parental, family, medical, and sick leave.

35.    However, the CARES Act excluded from the definition of payroll costs for PPP loan application purposes any employee compensation in excess of an annual salary of $100,000. PPP rules and regulations also precluded a borrower from including as payroll costs payments made to self-employed, independent contractors (so-called, "1099 Employees").

36.    To be a qualified borrower for PPP purposes, a small business (or non-profit organization) had to be in existence on February 15, 2020 and have employees for whom it paid salaries and payroll taxes, or paid independent contractors, as reported on IRS Forms 1099-MISC. The borrower could be an independent contractor, eligible self-employed individual, sole proprietorship or an organization employing no more than 500 employees (with certain exceptions allowing a greater number).

37.    To obtain PPP funding, the qualified borrower had to submit an SBA PPP loan application form ("Form 2483"), signed by an authorized representative of the entity, as well as certain backup supporting documentation.

38.    Form 2483 required the borrower to specify, among other things, its: (a) "Average Monthly Payroll," and (b) "Number of Employees," both of which figures were defined by PPP rules.

39.    Under PPP rules, the Average Monthly Payroll and Number of Employees figures were used to set the maximum amount of funds the borrower was eligible to receive. That maximum was calculated as the borrower's Average Monthly Payroll multiplied by 2.5, with

certain adjustments where the borrower had received an SBA Economic Injury Disaster Loan ("EIDL").

40.     The average monthly payroll cost was derived by aggregating allowable payroll costs from the prior twelve months (with certain exceptions) for employees whose principal place of residence was the United States and subtracting compensation paid to any employee in excess of an annual salary of $100,000. That figure was then divided by twelve to arrive at the average monthly payroll cost. Regardless, of the borrower's actual calculated average monthly payroll, however, the maximum PPP for any single borrower loan could not exceed $10 million..

41.     Form 2483 further required applicants to specify the purpose of the loan, namely, "Payroll," "Lease/Mortgage Interest," "Utilities," or "Other," the last of which required the applicant to "explain."

42.     Form 2483 also required the borrower to affirm, among other things, having read and understood Form 2483 and the borrower's eligibility to receive a PPP loan under the SBA rules in effect at the time the application was submitted.

43.     Form 2483 required the borrower to certify that:

All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

44.     Form 2483 required the borrower to certify that:

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

45.     Form 2483 required the borrower to certify that:

The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

10

46.    Form 2483 required the borrower to certify that:

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

47.    Form 2483 required the borrower to certify as follows:

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

48.    PPP loans were processed by SBA-authorized participating lenders. The lenders received from prospective borrowers, among other things, the Form 2483 and certain supporting loan application documentation, such as, IRS and/or state revenue department forms showing periodic employment/unemployment tax information for the borrower, for example IRS Forms 940 (Employer's Annual Federal Unemployment ("FUTA") Tax Return), 941 (Employer's Quarterly Federal Tax Return), W-2 (Wage and Tax Statement) and W-3 (Transmittal of Wage and Tax Statements).

49.    Where the PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed 100%.

50.    After PPP loans were approved, the lenders conveyed the borrower's information, including the amount of the loan and Form 2483-listed number of employees, to the SBA.

51.    Approved borrowers were also required by the terms of Form 2483 to provide to the lender with documentation verifying the number of full-time equivalent employees on the

borrower's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the 24-week period following receipt of the loan proceeds.

52.     The PPP rules as finally implemented further required, for loan forgiveness purposes, that the PPP funds be expended for authorized purposes during the 24-week period following receipt of the loan proceeds and that at least 60% of the loan proceeds be used for covered payroll expenses.

53.     In order to obtain PPP loan forgiveness the borrower had to submit SBA Form 3508 according to the instructions set out in SBA Form 3508EZ.

54.     Form 3508 required the borrower to certify that:

The dollar amount for which forgiveness is requested: was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);...

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

55.     In addition to promulgating and publishing PPP rules and regulations, the SBA also disseminated to the general public, including via the Internet, PAYCHECK PROTECTION PROGRAM LOANS, Frequently Asked Questions (FAQs) with SBA-provided answers and other summaries and explanations of the program's requirements.

## FACTUAL ALLEGATIONS CONCERNING DEFENDANTS' FRAUDULENT APPLICATION FOR, AND RECEIPT AND RETENTION OF, PPP FUNDS

56.     At all times relevant to this compliant, Defendants operated WBP.

57.     In or about April 2020, Defendants submitted an SBA PPP Borrower Application Form 2483 or the equivalent to City National Bank for a $326,700 PPP loan.

58.     In their PPP application, Defendants expressly affirmed and certified all of the conditions specified on Form 2483, including those set forth above.

59.     Among other things, Defendants falsely represented on the PPP loan application form how they intended to use the funds, certifying that they would be used for the delineated business purposes, when, in fact, Defendants did not intend to use them for such purposes, but rather, for Wright's personal benefit. Defendants also falsely certified that WBP needed PPP funds to support WBP's ongoing operations.

60.     On or about April 8, 2020, the City National Bank approved Defendants' PPP loan application (SBA Loan Number 8119107004).

61.     In or about May, 2020,  Defendants received $326,700 in PPP loan proceeds.

62.     After receiving the PPP funds, Defendants deposited the funds in a bank account at City National Bank in Florida (namely, account number 30000193060).

63.     On or about September 22, 2022, Wright sent Relator a text message with a link to a website informing PPP loan borrowers how to obtain loan forgiveness. And on or about November 19, 2020, Wright sent Relator an email requesting that Relator apply for forgiveness for Defendants' PPP loan.

64.     At various times, after receiving the November 19, 2020 email, Relator advised Wright via email, correspondence and text messages that Defendants were not entitled to receive

13

or retain the PPP loan funds or to obtain forgiveness of them. This included an email dated November 27, 2020 in which Relator referred Wright to a prior email with a letter attached that stated in great detail why Defendants were not entitled to a PPP loan and loan forgiveness.

65.     Notwithstanding this admonishment, Defendants chose to seek PPP loan forgiveness for the full amount of the loan plus interest without Relator's assistance.

66.     In or about late 2020 or early 2021, Defendants applied for 100% PPP loan forgiveness by submitting to City National Bank SBA Form 3508 or its equivalent.

67.     In their loan forgiveness application, Defendants expressly affirmed and certified all of the conditions specified on Form 3508, including those set forth above.

68.     Among other things, Defendants falsely represented on the PPP forgiveness application form how they actually used the funds, certifying that they had been used for the delineated business purposes during the specified time period, when, in fact, Defendants actually set them aside for Wright's personal use during that time frame.

69.     At the time Defendants had their PPP loan forgiven, as Defendants well knew, none of the PPP funds Defendants had received and retained were used for any WBP business expense, including, any PPP Covered Costs.

70.     Beginning in or about December 2020, Defendants began transferring the unused and untouched PPP funds from Defendants' bank account at City National Bank in Florida to one of WBP's deposit accounts at a Chase bank in Ohio (namely, account 000000866450984).

71.     On or about June 15, 2021, the SBA forgave Defendants' PPP loan principal and interest, in the total amount of $330,396.63.

72.     Defendants never used any of the PPP loan proceeds for the required purposes during the prescribed timeframe.

14

## COUNT 1
### False Claims Act Violations Against Defendants
### 31 U.S.C. §§ 3729(a)(1)(A), (B), and (G)

73.　　Relator re-alleges the above allegations as if set forth fully here.

74.　　This is a claim for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729-32.

75.　　Through the acts described above and otherwise, Defendants, by and through their employees, agents and representatives, knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth:

(a)　　Presented, or caused to be presented, to an SBA-authorized PPP lender and to an officer or employee of the SBA, false or fraudulent claims for payment or approval concerning PPP loan applications by misstating on Forms 2483 the Defendants' Average Monthly Payroll and Number of Employees, as well as, promises not to misuse PPP proceeds while, in fact, using them for purposes other than those allowed by the PPP rules and regulations, all in violation of 31 U.S.C. § 3729(a)(1)(A);

(b)　　Used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, namely, by submitting the above-described Forms 2483 and supporting loan documentation to an SBA-authorized PPP lender and to the SBA,  all in violation of 31 U.S.C. § 3729(a)(1)(B). And,

(c)　　Made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government by wrongfully retaining PPP funds to which each Defendant was not entitled, all in violation of 31 U.S.C. § 3729(a)(1)(G).

76.     Upon information and belief, prior to receiving notice of Relator's allegations, the United States was unaware of the falsity and fraudulent nature of the PPP loan-related claims, records or statements submitted or made by each of the Defendants to the lenders and/or SBA.

77.     Upon information and belief, the false and fraudulent PPP loan-related claims, records or representations made to the lenders and/or the SBA by each Defendant were material to the SBA's decisions to make PPP funds available to Defendants and to forgive their PPP loan.

78.     By reason of each Defendant's violations of the FCA, the United States has suffered a substantial economic harm in an amount to be determined at trial and is entitled to treble damages and a civil penalty as required by law for each violation.

## DEMAND FOR RELIEF

WHEREFORE, Relator, on behalf and in the name of the United States, and on Relator's own behalf under the *qui tam* provisions of the FCA, demands judgment against Defendants as follows:

A.     As to Count 1 of the complaint:

(i)     Directing Defendants to cease and desist from violating the FCA;

(ii)     Awarding damages in the amount of three times the economic loss the United States sustained because of Defendants' actions, plus a civil penalty of $11,000 for each act in violation of the FCA, as provided by 31 U.S.C. § 3729(a) and adjusted by subsequent legislation, with interest;

(iii)     Directing Relator be awarded the maximum amount available under 31 U.S.C. § 3730(d) for bringing this action, namely, twenty-five percent (25%) of the proceeds of the action or settlement of the claim if the United States intervenes in the matter (or pursues its claim through any alternate remedy available to the United States,

16

31 U.S.C. § 3730(c)(5)), or, alternatively, thirty percent (30%) of the proceeds of

the action or settlement of the claim, if the United States declines to intervene;

(iv)    Awarding Relator all reasonable litigation expenses necessarily incurred in

prosecution of these claims, plus all reasonable attorneys' fees and costs, as

provided by 31 U.S.C. § 3730(d). And,

B.    Granting such other and further relief to the United States and Relator as this Court

deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Relator hereby demands this case be tried before a jury.

Dated:  Washington, D.C.
        November 15, 2022

                                  COHEN SEGLIAS PALLAS
                                  GREENHALL & FURMAN

                                  By: _____
                                  Julie A. Grohovsky (D.C. Bar # 412 566)
                                  900 Seventh Street, NW
                                  Suite 725
                                  Washington, D.C. 20001
                                  Tel: (202) 466-4110
                                  Fax: (202) 466-2693
                                  Email: jgrohovsky@cohenseglias.com

                                  McINNIS LAW

                                  By: /s/Timothy J. McInnis
                                  Timothy J. McInnis
                                  521 Fifth Avenue, 17th Floor
                                  New York, NY 10175
                                  Tel: (212) 292-4573
                                  Fax: (212) 292-4574
                                  Email: tmcinnis@mcinnis-law.com
                                    [pro hac vice application to be filed]

                                  *Attorneys for Relator*